WILLIAM A. FORCE & CO., Inc., v. BATES MACH. CO.

(Circuit Court, E. D. New York.  May 6, 1909.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ENGRAVING MACHINES.
    The Chase patent No. 517,680, for an engraving machine, claims 1
8, inclusive, *held* not anticipated, valid, and infringed.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity: On reargument.

William E. Warland, for complainant.

F. Warren Wright, for defendant.

CHATFIELD, District Judge.  In the opinion filed April 7, 1909
(169 Fed. 647), the court found claim 4 of the patent in suit to be
valid, in so far as it comprises a combination of other elements with
a counterbalance, in the exact form of the machine produced by the
complainant upon the trial; and in the form in which, with the sub-
stitution of a universal joint for a ball and socket, the defendant's
machines, as typified by the Day sketch (and including the one ma-
chine sold to the defendant by Chase), were made and which have been
found to be infringements.

The precise issue on which testimony was taken, and upon which
the opinion was based, was limited to the actual machines shown,
falling, as has been said, under claim 4 of the patent, and under the
language of claim 3, by means of which the swinging arm is carried
back through the framework of the supporting uprights.  It was as-
sumed that the questions in the case were covered by the issues de-
cided; but it has been pointed out, upon a motion for a reargument,
that the broad claims 1, 2, and 3 of the patent were put in issue by
the defendant's answer, and that the testimony as to the machines
shown was relevant also to the issues of validity on those particular
claims.  In so far as the defendant did not deny the use of the ma-
chines referred to, that admission also affected the issues upon all of
the claims, 1 to 8, and not simply claim 4, which described the ma-
chine actually produced in court.

Claim 1 of the patent is as follows:

    "(1) The combination with means for holding the article to be engraved,
and a pattern plate, of a spindle, a tool carried thereby, a bearing or sleeve
for the spindle, a universal joint holding the spindle bearing and in which
it is movable endwise, an arm connected with the spindle bearing at one end,
and a pointer carried at its other end, whereby the engraving tool receives
a proportional movement and is lifted off the work by the lifting of the pointer
from the pattern, substantially as specified."

Claim 2 is similar, so far as the questions here involved are con-
cerned, while claim 3 brings in the alternative form of the swinging
arm, and uses the following language:

    "(3) In an engraving machine, the combination with a rotary cutting device
and means for holding the work blank, of a supporting standard having an
opening in the face thereof, an arm connected directly with the cutter mech-
anism and adapted to move the same both vertically and laterally, said arm
extending down behind the standard and forward through said opening there-

in and terminating in a pointer, a pattern plate located in front of the standard and containing a pattern around which the pointer is to be moved, substantially as set forth."

Claim 4 is the first one to suggest the idea of the counterbalance:

"(4) In an engraving machine, the combination with a pattern plate, a spindle and cutter, means for rotating the same, and a support therefor, of an arm connected to the spindle support and extending downward to a pattern plate and adapted to move the cutter in a decreased ratio, and a counterbalance mechanism for the spindle mechanism and arm, substantially as specified."

Claims 5 and 6 must be disposed of in accordance with the decision upon claim 4, and the other claims need not be particularly specified.

It is shown by the file wrapper that claim 1, as originally filed, did not specify the possibility of vertical movement of the sleeve through the universal joint, and that the Patent Office rejected the claim, upon the Luce and the Engle patents heretofore set forth.

Attention is now called by the defendant to the proposition that, if the broad inventions of claims 1, 2, and 3 be held anticipated by the Luce and Engle patents, or any other patent, and these claims, therefore, declared invalid, the defendant would be entitled to have a decree upon that determination; and that the complainant, inasmuch as no disclaimer had been filed, would not be entitled to costs in the action. Page Machine Co. v. Dow, Jones & Co. (C. C. A.) 168 Fed. 703 (2d Circuit; March 25, 1909), and cases therein cited. It has been pointed out by the defendant that, in admitting infringement by the machines above referred to (assuming the first four claims of the Chase patent to be valid), such supposed infringement was predicated upon the idea that the Chase patent could be distinguished from the prior art and from the Luce and Engle patents, only in the combination of the other features with a shaft moving through a sleeve in the universal joint. The defendant charges that the only feature of the Chase patent which need be attacked, if its invalidity is to be established, is this feature which he claims was shown in the Luce patent in particular. He also contends that, in the Luce patent as well, the spring shown in the drawing, to a certain extent, performs some of the functions of a counterbalance. It is also argued by the defendant that the idea of a counterbalance is shown in the stone engraving and carving patents to Moore, No. 394,710. December 18. 1888, Moore, No. 409,695, August 27, 1899, and Hunzinger, No. 463,836, November 24, 1891, and was not original with Chase. On the other hand, it is suggested by the complainant that the court has found that the combination of the machine actually produced in court, and constructed under claims 3 and 4 of the Chase patent, showed novelty and patentable invention; that claim 4, as well as claim 3, makes use of the broad functions set forth in claims 1 and 2; and that the machines described in claims 1 and 2, illustrated by the specifications and drawings of the Chase patent, are but broader equivalent forms of the machine held valid under claim 4. The complainant argues that even under claims 1, 2, and 3 the use of a counterbalance is clearly and necessarily assumed, although not stated in definite language. For these reasons the complainant urges that the Chase patent should

be held valid as to claims 1, 2, 3, and 4, and that the defendant be held to infringe each of these claims, the infringement being substantially admitted if the validity be established.

An examination of the Luce patent shows that a spring is made use of to hold the pointer or tracing end of the structure against the pattern, and that the pattern is adjusted or screwed down, so that under the pressure of the spring the cutting tool would come in contact with the work. In a sense, by exerting pressure against this spring, the pointer could be removed from the pattern, and the cutting tool swung away from the design. In cutting a closed design, such as the interior of the letter "O," the Luce machine could not be as simply and easily lifted away from the work as in the Chase patent. The actual result would seem to differ from that obtained by the counterbalance and swinging arm in the Chase patent. In fact, even without the counterbalance, but with the mere balanced form of construction, where the cutting tool is above the work, and the pointer is above the pattern, as in all of the Chase claims, the possibility of instant removal of the cutting tool is an important feature of the machine, and the counterbalance simply adds to the efficiency of this feature.

A reference to the opinion will also show that the court, upon page 14, spoke of the Benton patent as including the rotating cutter in the swinging frame. It is true that further on the court spoke of the alternative construction, in which the work could be made stationary and the cutting tool movable; and no confusion actually existed with respect to the functions of the Benton patent. But the complainant is correct in his assertion that a description used by the court, in which the cutting tool was made to swing with the universal joint, was incorrect. Benton's idea, in his principal construction, was to move the work in proportion to the movement of the pointer, and thus to bring different portions of the work in contact with a fixed cutting tool. But he did, as well, claim the alternative construction, in which the cutting tool should be movable. The Chase patent must, therefore, be tested from the disclosures of this alternative construction of the Benton patent, and the court is still of the opinion that a machine constructed in the alternative form of the Benton patent would be much nearer the machine described by Chase, and still more like the machine used by the defendant, than that described in any other of the patents in the testimony.

But as to the general question of novelty and patentability in the Chase claims 1 to 8, as a whole, it does not seem that either Benton or Luce, or any other patent, anticipated the structure shown by Chase; and viewing the Benton patent and the Luce patent from the standpoint of a machine carrying a swinging arm from the end of a shaft, working in a sleeve through the universal joint, sufficient practical and useful, as well as simple and economical, improvement is shown in the Chase patent to justify holding it valid as to all of the claims called in question, and the structures of the defendant seem plainly to infringe.

As to the one machine purchased from Chase, it need only be said further that no injunction or damages will be awarded, if it is satis-

factorily shown that the machine was purchased before the issuance of the patent.

As to the objection that claims 1, 2, and 3 of the Chase patent are so general in terms that they should be held void for indefiniteness and anticipation by a number of the patents shown in the case, it need only be said that the elements pointed out in this additional opinion, when read in connection with the specifications and drawings, seem to show a structure that is not indefinite; that is, it does describe a complete machine, which was not anticipated in the points previously pointed out by any earlier patent.

The claims should, therefore, be held valid, and the complainant may have a decree.