PAGE MACH. CO. v. DOW, JONES & CO.

(District Court, S. D. New York. November 2, 1912.)

No. 9,275.

PATENTS (§ 328*)—INFRINGEMENT—PRINTING TELEGRAPH RECEIVER.

Infringement of the Joy patent, No. 780,664, for a printing telegraph receiver, claim 12, *held* not avoided by a modification of defendant's machine previously held to infringe.

In Equity. Suit by the Page Machine Company against Dow, Jones & Co. On motion to punish for contempt. Motion sustained.

See, also, 94 C. C. A. 209, 168 Fed. 703; 200 Fed. 72.

Gifford & Bull, of New York City (J. Edgar Bull, of New York City, of counsel), for complainant.

Emerson R. Newell, of New York City, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HAZEL, District Judge. A brief narration of the history of this litigation will be helpful to a complete understanding of the question which involves a contended violation of the decree of this court. In the year 1908 the Joy patent, No. 780,664, dated January 24, 1905, for a page ticker, was held valid and infringed by the defendant, Dow, Jones & Co., as to claims 1–6, inclusive, 9–12, inclusive, 23, 24, 26, 27, and 30. (C. C.) 166 Fed. 476. On rehearing, it was stated that certain claims were limited to three essential mechanisms—a typewheel mechanism, a paper-feeding mechanism, and a so-called line-spacing mechanism; all three instrumentalities in operation being kept in a state of constant stress. (C. C.) 166 Fed. 479. Such relation and independent intermittent movements of the three instrumentalities specified were produced by the constant rotation of the driving shaft to which they were attached, by means of a friction drive connected with a single battery; each instrumentality being provided with an escapement.

Claim 12 received a broad construction, and was not in terms limited to a mechanism under constant stress, and therefore was held anticipated by the Wright patent, No. 466,858. The decree of this court was affirmed by the Circuit Court of Appeals. The defendant then moved in the Circuit Court of Appeals for a modification of the mandate, requiring the complainant to disclaim claim 12, but the application was denied; the court holding that the complainant had the right to first be heard on appeal as to such claim. 168 Fed. 703, 94 C. C. A. 209. Afterwards, however, the complainant filed a disclaimer, limiting claim 12 to the narrow construction which had been previously accorded it in the original opinion. Next a supplemental bill was filed to hold the defendant liable for infringement of claim 12 as limited by the disclaimer, and the defendant interposed a demurrer, which was overruled. The case then came before this court for final hearing, and claim 12, as modified by the disclaimer, was held valid and infringed. 200 Fed. 72. No appeal was taken therefrom, and the injunction issued. The defendant modified its page ticker, and the complainant now urges that such modification was simply an evasion, and an infringement of claim 12, which reads as follows:

"12. In a printing telegraph receiver, the combination of a type-wheel, paper-feeding mechanism, a constantly rotating drive shaft, and means for continuously feeding the paper without feeding the type-wheel as long as said drive shaft is supplying power, for substantially the purposes set forth."

The elements of said claim are: (1) The type-wheel; (2) the paper-feeding mechanism; (3) the constantly-rotating drive shaft; and (4) the means for constantly feeding the paper without feeding the type-wheel as long as the drive shaft is supplying power. The important feature of the claim resides in the latter element, which enables the intermittent operation of the line-spacing mechanism as desired without feeding the type-wheel as long as the drive shaft rotates. In other words, the performance of the function of the line-spacing mechanism is dependent upon the continuous rotation of the drive shaft, which supplies the required power to the letter-spacing shaft, without

which the paper cannot be continuously fed, independently of the feeding of the type-wheel. The arrangement of a drive shaft in such a way as to produce this result was new and novel.

The scope of claim 12 is not thought so narrow as to require reading into it that the line-spacing mechanism should be under constant stress, in the sense that its shaft be directly connected to the main shaft by a friction clutch. This view I think finds support in the prior art upon which the defendant places reliance. For instance, in the Merritt & Joy patent, No. 558,506, is shown a type-wheel and letter-spacing mechanism under constant stress, while the paper-feeding rolls and shaft lie inert. To space between lines it is necessary to move the type-wheel carriage, first to the right and then to the left, while in the patent in suit the spacing between the lines is done at will without moving the carriage. This feature is included in the fourth element of the claim in issue, and is thought to have been a patentable improvement.

The Sheehy patent, No. 325,702, is without the constantly rotating drive shaft of the claim in controversy, and therefore requires no further consideration. The Wright patent has a paper-feeding mechanism, which is, however, not attached by a friction device to a constantly rotating main shaft, and must, therefore, also be passed by. As already stated, the record does not show any prior combination of a constantly rotating drive shaft with means for continuously feeding the paper without feeding the type-wheel, and therefore the court cannot read into the claim that the means for feeding the paper must be under constant stress.

This construction of the claim, to which I think it is fairly entitled, presents the question of whether the defendant by its present machine has avoided infringement. It continues to use a combination of a type-wheel and letter-spacing and line-spacing mechanisms; the first two only being attached directly to the main shaft and under constant stress. For making spaces between the lines the defendant now uses a rock shaft to close a battery, which in turn energizes a magnet connected with a pawl and ratchet. A succinct description of defendant's machine, as testified to by defendant's witness Watson, follows. He says:

"The letter-space shaft 8 is permitted to move intermittently by the escapement 13, and when it moves the cam 65 rocks the lever 113. An arm 126 on the type-shaft 6 is, in one position of the type-shaft in the path of pin 121 on lever 113. When arm 126 is not in position to oppose pin 121, the lever 113 rocks idly on fulcrum pin 114a. If, however, arm 126 opposes pin 121, lever 113 is rocked about the pin 121 by the cam 65, and, in doing so, engages the arm 104 and rocks shaft 102. In the former machine the rocking of shaft 102 worked an escapement which controlled the movement of the paper-feed devices, and the paper could be fed continuously so long as the letter-space shaft 8 was operated by the continuously moving shaft; the arm 126 on the type-wheel shaft remaining stationary to oppose the pin 121 on lever 113."

It will be noticed that the rocking of the shaft closes the circuit through a magnet which operates the paper-feed devices, but which are capable of continuous operation only when the letter-space shaft is continuously operated by the rotation of the main shaft. Such

adaptation, in my opinion, does not avoid infringement of the claim under consideration.

The record satisfactorily shows that there has been no intentional contempt or disobedience of the decree of this court, and therefore only nominal punishment will be imposed. The defendant in conceded good faith has striven to alter its machine to avoid infringement, and in view of the circumstances a supersedeas will be granted on request, to enable a review of this ruling by the Circuit Court of Appeals, or to afford time for removing the infringing machines from the offices of defendant's customers, or for making alterations.

The decree will settle the details.