UNION PAPER-BAG MACHINE CO. *et al. v.* WATERBURY *et al.*

(*Circuit Court, S. D. New York.* July 13, 1889.)

**1. PATENTS FOR INVENTIONS—REISSUE—PAPER BAGS.**
   Reissued letters patent No. 10,083, granted April 11, 1882, to Mark L. Deering, describe an invention consisting in a novel mode of folding and pasting a piece of paper into the form of a quadrangular, flat-bottomed bag. The original patent described the process as follows: "By making, in a sheet of paper or blank the folds, B and C, then pasting together the two ends, A, A, forming the body or tube of the bag, then forming the fold E, at one end of said body or tube, and the inwardly projecting triangular folds, H, H, side folds, G. G, and fold, I, upon which is then folded the lap, J, secured in place by pasting." The reissued letters omitted in the second step, "forming the fold, E, at one end of said body or tube," but recited as its second step, "then spreading open one end of said body or tube." *Held*, that this was the equivalent of the original, as it involved the previous formation of the fold. E, or an equivalent determination of the part of the tube to be made into the bottom of the bag.

**2. SAME.**
   The reissued patent contained a second claim for "a bag consisting of a bellows-sided tube having a satchel bottom and inward triangular folds, which form part of its two sides when distended." The application for the original contained a claim similar to this for a bag, irrespective of the process, but it was rejected, apparently because anticipated, and the claim was withdrawn. *Held*, that the patentee thereby waived his claim for a bag as a new article of manufacture, and that the reissue was obtained for the mere purpose of enlarging the monopoly of the patent.

**3. SAME.**
   Under such circumstances it is immaterial that the application for a reissue was made within two years from the time of the original grant.

4. SAME—INFRINGEMENT.

In the process described in the patents granted subsequent to the patent in suit to William A. Lorenz and William H. Honiss, the determination of the transverse line to define the part of the paper that is to be made into the bottom of the bag is effected by the use of a presser plate which marks the line without doubling back the part of the paper to be manipulated, as is done in the patent in suit, and the order of making the final laps, I and J, is changed, so that lap J is made first. *Held*, that the differences are immaterial, and bags made under these patents infringe complainants' patent.

In Equity. Bill for infringement of letters patent.

*George Harding* and *Francis T. Chambers*, for complainants.

*Albert H. Walker* and *Frederick H. Betts*, for defendants.

WALLACE, J. This suit is brought upon reissued letters patent No. 10,083, dated April 11, 1882, granted to Mark L. Deering, assignor to the Union Paper-Bag Machine Company, for improvements in the manufacture of paper bags. The original patent was granted to Deering, May 11, 1880, and the application for the reissue was filed November 29, 1881. The defendants are manufacturing paper bags by using machinery for which patents were granted to William A. Lorenz and William H. Honiss, subsequent to the date of the patent in suit. The defenses are non-infringement, the invalidity of the reissue, and priority of invention by Felix W. Leinbach. The invention which is described in the patent consists in a novel mode of folding and pasting a piece of paper into the form of a quadrangular, flat-bottomed bag. The invention is an ingenious and very useful one. The bag can be folded into a flat piece of paper, and thus a large number can be included in a bundle, occupying but a small space, in a convenient form for transportation, and ready for immediate use; and the grocer has merely to grasp it at the upper side, and "give it a flip through the air" as he lifts it from the counter, and it at once becomes a square box, which will stand upon its bottom. The shape and symmetry of the package when filled, and the facility with which its contents can be wholly emptied, there being no folds or loose pockets inside, commend it at once as a simple, servicable, and exceedingly convenient contrivance. The conception that such a bag could be made was a felicitous one; but the development of the conception into the completed invention by selecting and pursuing the necessary folding and pasting operations to transform the piece of paper into the bag would seem to have involved hardly more than the exercise of the ordinary skill of the calling. The description of the invention, as set forth in the specification of the reissue, is, without material changes, the same as in the specification of the original. The nature of the invention is such that an adequate understanding of it must largely be derived from the drawings which illustrate it. The specification and drawings point out the process of making the bag to consist of five operations, some of which are merely folding operations, and some of which involve pasting besides folding. These are: (1) A fold to make the well-known bellows-folded tube, and the pasting of the sides folded in. (2) The folding of one end of the

tube over upon the body to make the lap, E.    The making of this lap is only necessary to define the part of the paper to be operated upon to make the bottom.  (3) The turning up of the part defined by the lap, E, at about a right angle to the body of the tube, distending it, and forming across the ends a crease, F, as shown by the drawing, (Fig. 6.)    This is done by pushing inward the paper above the crease, and folding it down upon the bag, to make the laps, G, G, shown in the drawing.  (Fig. 5.) This manipulation of the bag forms, not only the two side laps, G, G, but also the triangular folds, H, H, as shown in Fig. 5.    The two remaining operations necessary to complete the bag involve pasting, as well as folding, to make the laps, I and J, and are such obvious ones as not to require description.    The only part of the whole process which is not perfectly simple and obvious is that which involves the making of the side laps, G, G, and the triangular folds, H, H; and it would be manifestly impossible to describe the precise method of manipulating the paper to make these side laps and triangular folds otherwise than by showing the form in which the paper is to be folded.    The claims of the reissue are as follows:

"(1) The herein-described process or method of forming paper bags, by making, in a sheet of paper or blank, the folds, B and C, then pasting together the two sides, $A^1$, $A^2$, forming a bellows-sided body or tube of the bag, then spreading open one end of said body or tube, then forming the inwardly-projecting triangular folds, H, H, side laps, G, G, and laps, I, J, which latter are secured in place by pasting or otherwise, substantially as described.    (2) A bag consisting of a bellows-sided tube having a satchel bottom and inward triangular folds, which form part of its two sides when distended."

The claim of the original patent was as follows:

"The herein-described process or method of forming the bottoms of paper bags, by making, in a sheet of paper or blank, the folds, B and C, then pasting together the two ends, A, A, forming the body or tube of the bag, then forming the fold, E, at one end of said body or tube, and the inwardly projecting triangular folds, H, H, side folds, G, G, and fold, I, upon which is then folded the lap, J, secured in place by pasting or otherwise, substantially as set forth."

The paper bags made by the defendants embody, although with immaterial differences, the invention described in the claim in the complainants' patent.    The determination of the transverse line to define the part of the paper that is to be made into the bottom of the bag, which in the patent is effected by doubling over the part upon the body of the tube, is effected in the process of the defendants by the use of a presser plate, which marks the line without doubling back the part of the paper to be manipulated; and the order of making the final laps, I and J, is changed, so that the lap, J, is made before lap, I, instead of subsequently, as in the process of the patent.    The making of a transverse line to define the part of the tube to be operated on according to the method of the defendant is an equivalent of the method of the patent, as appears by the patents to Howlett of 1874, and Webster of 1875; and the relative order of making the two final laps is a matter merely of expediency, and is stated to be so in the specification of the patent.    Of course it is immaterial that the instrumentalities by which the several operations are

performed are, in the one case, the machinery used by the defendants, and, in the other, the manual manipulation of the paper without the assistance of machinery. The consideration that the invention of this machinery has invested the invention of the patent with its principal commercial value cannot derogate from the rights of the complainants.

The more serious questions in the case are presented by the defenses, which assert the invalidity of the reissue and the priority of the invention by Leinbach. The first claim of the reissue omits a recital in terms of the second step of the process described in the specification, and in this respect differs from the claim of the original; but this step, or an equivalent one, is necessarily implied by the words "then spreading open one end of the tube," which appear in the claim of the reissue, and were absent from the claim of the original. This language is to be read as importing into the claim the operation of "turning up the lap, E, at a right angle to the body of the tube, and distending it, as shown in Fig. 5," as described in the specification; and this operation necessarily requires the previous formation of the lap, E, or an equivalent determination of the part of the tube which is to be made into the bottom of the bag. This seems to be not only a fair interpretation of the first claim of the reissue, but the construction which its language imperatively requires. It follows, therefore, that this claim is, in substance, the claim of the original patent.

The second claim of the reissue, if it could be upheld as valid, would subordinate to the monopoly of the patentee any bellows-sided, satchel-bottom bag, having the inward triangular folds, irrespective of the process or method by which the bag is made; consequently the claim is for a broader invention than that specified in the claim of the original patent. According to the testimony of the expert witness for the complainants, it would enable the patentee to appropriate the invention shown in the patent to Daniel Appel, granted September 9, 1879, the application for which was filed a few days subsequently to the original application of Deering. The application of Deering had been prepared with a view to a claim for a bellows-sided, satchel-bottom bag, irrespective of the process of making the fold and laps, and contained a claim which was, in substance, like the second claim of the reissue. This claim was rejected by the patent-office, apparently because it was anticipated by the old bellows-folded bag; and the applicant amended his application by withdrawing the claim. He could have readily pointed out that the rejection was based upon false premises, or could have amended his claim so as to remove any doubt of its correct phraseology. Instead of doing this, he acquiesced in the action of the office, and accepted a patent with a claim for the process only. Under these circumstances it must be held that the patentee waived the claim for the bag as a new article of manufacture, and that the circumstances are inconsistent with the theory that there was any mistake inadvertently committed in the terms of the patent as granted. It is plain that the reissue was obtained, not for the purpose of correcting a mistake, inadvertently committed in the wording of a claim, but for the mere purpose of enlarging the monopoly of the

patent; and, under such circumstances, it is quite immaterial that the application for the reissue was made within two years from the time of the original grant. *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174; *Coon* v. *Wilson*, 113 U. S. 268, 5 Sup. Ct. Rep. 537.

The question of fact presented by the defense of the priority of invention of Leinbach is close; but the conclusion is reached that this defense has not been so cogently established as to overthrow the presumption arising from the granting of a patent. It will not be profitable to enter upon an analysis of the testimony. It must suffice to state that the testimony of Mr. Edson, Mr. Allison, Mr. Brightman, and Mr. Fletcher, to the effect that Deering exhibited to them, respectively, previously to March, 1878, bags substantially like the bag of the patent, is accepted as true. The usual decree for an injunction and an accounting is ordered for the complainants, but without costs, and conditioned upon the filing of a proper disclaimer of the second claim.